# United States Court of Appeals
# for the Federal Circuit

———————————————

**BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC (FORMERLY BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC) AND BRIDGESTONE CORPORATION,**
*Appellants,*

**v.**

**FEDERAL CORPORATION,**
*Appellee.*

———————————————

2010-1376
(Opposition No. 91168556)

———————————————

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

———————————————

Decided: March 16, 2011

———————————————

DOUGLAS A. RETTEW, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for appellants. With him on the brief was DANNY M. AWDEH.

EVERETT E. FRUEHLING, Christensen, O'Connor Johnson Kindness PLLC, of Seattle, Washington, argued for appellee.

---

Before NEWMAN, PLAGER, and REYNA, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Bridgestone Americas Tire Operations, LLC and Bridgestone Corporation (together "Bridgestone") appeal the decision of the Trademark Trial and Appeal Board ("TTAB" or "Board") dismissing Bridgestone's opposition to registration of the mark MILANZA for use with tires. The Board concluded that there is no likelihood of confusion as to source, as between Bridgestone's marks POTENZA and TURANZA, on one hand, and Federal Corporation's mark MILANZA, all for use with tires.[1] We reverse the Board's decision, and sustain the opposition.

## BACKGROUND

Bridgestone registered the mark POTENZA for tires in June 1984, stating use in commerce since 1981. Bridgestone registered the mark TURANZA for tires in May 2004, stating use in commerce since 1991. Federal filed an intent-to-use application to register the mark MILANZA for tires in October 2004. Bridgestone opposed registration of MILANZA on the ground of likelihood of confusion as to source, arguing that the established POTENZA and TURANZA marks possess market strength and are similar enough to MILANZA to cause confusion, as to source, since all of the marks are used for tires.

The Board applied the principal factors relevant to whether there may be a likelihood of confusion between

---

[1]    *Bridgestone Firestone N. Am. Tire, LLC, v. Federal Corp.*, Opposition No. 91168556, 2010 WL 985350 (TTAB Feb. 24, 2010).

specific marks, as collected in *In re E.I. DuPont deNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). Weighing in favor of confusion, the Board found that both Bridgestone and Federal use the marks for the same goods, and that the goods are sold to the same classes of consumers, under similar conditions of sale. Weighing against confusion, the Board found that the MILANZA mark is not similar to the POTENZA and TURANZA marks, and that the marks POTENZA and TURANZA had not achieved significant consumer recognition independent of the BRIDGESTONE mark. The Board gave "little" weight to Bridgestone's survey evidence of consumer confusion as to the source of tires bearing the MILANZA mark, and held that the "dissimilarity of the markssimply outweighs the other relevant factors." TTAB op. at 28, 2010 WL 985350 at *11. The Board concluded that confusion was not likely as to the source of the tires, and dismissed the opposition. Bridgestone appeals, stating that the Board erred in fact and law.

## DISCUSSION

The question of likelihood of confusion is a question of law based on underlying facts, and receives plenary judicial review. *In re Coors Brewing Co.*, 343 F.3d 1340, 1343 (Fed. Cir. 2003) ("The question whether there is a likelihood of confusion between a registered mark and a mark for which a registration application has been filed is an issue of law based on underlying facts."). In turn, the PTO's findings as to the *DuPont* factors are reviewed for support by substantial evidence. *See Dickinson v. Zurko*, 527 U.S. 150, 165 (1999) (factual findings of PTO tribunals are reviewed in accordance with the standards of the Administrative Procedure Act, 5 U.S.C. §706).

Bridgestone argues that in view of the market strength and public familiarity with the POTENZA and TURANZA

marks for tires, the common suffix of MILANZA and the shared cadence and sound and Italian connotation, consumers are likely to deem these products to have the same source. Federal argues that the marks have different connotations, in that POTENZA is Italian for power and is a performance tire, and TURANZA suggests a touring tire. Federal states that MILANZA invokes Milan, a famous European city. Federal states that it chose the ZA ending because ZA is used to impart emphasis in Chinese (Federal is a company of Taiwan). Federal argues that NZA marks are common in the automotive industry, citing the mark MONZA for various automotive products, the Suzuki FORENZA for "automobiles and structural parts therefor," and the Toyota VENZA crossover vehicle. Federal states that POTENZA and TURANZA are weak marks, and not entitled to breadth.

It is the opposer's burden to establish facts sufficient to support the conclusion that confusion, mistake, or deception is likely. *See* 15 U.S.C. § 1052(d) (refusing registration of a mark that so resembles a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive"); *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1359 (Fed. Cir. 2001). Although the opposer bears the burden of coming forward with sufficient evidence, a new entrant presenting a new mark for registration has an obligation to avoid confusion with established marks in the same market. *See Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002) ("This court resolves doubts about the likelihood of confusion against the newcomer because the newcomer has the opportunity and the obligation to avoid confusion with existing marks."); *Planters Nut & Chocolate Co. v. Crown Nut Co.*, 305 F.2d 916, 924-25 (CCPA 1962) ("all doubt as to whether confusion, mistake, or deception is likely is to be resolved against the new-

comer"). A "strong mark . . . casts a long shadow which competitors must avoid." *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 353 (Fed. Cir. 1992). As Professor McCarthy states: "It is illegal to share in another's good will by confusing buyers into mistaking the source of a product." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:20 (4th Ed.).

## A

The fame of the opposer's mark plays a "dominant role in the process of balancing the *DuPont* factors," *Recot Inc., v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000), for well known marks are more likely to be associated in the public mind with the reputation of the source. "Famous marks thus enjoy a wide latitude of legal protection." *Id.* A strong mark is one "with extensive public recognition and renown." *Kenner Parker Toys*, 963 F.2d at 353. The Board found that there is no commercial strength or fame of the POTENZA and TURANZA marks independent of the mark BRIDGESTONE.

Bridgestone argues that POTENZA and TURANZA are strong marks, for the words are unique, and these branded tires are well known, heavily advertised, and widely sold. Bridgestone presented evidence that it had billions of dollars in sales of POTENZA and TURANZA marked tires from 2004-2007, and had conducted extensive advertising, promotion, and marketing for POTENZA and TURANZA marked tires from 2002-2007. Bridgestone states that these marks are sufficiently famous and unusual that the public would be likely to believe that tires bearing the MILANZA mark were of the same origin.

The Board found that Bridgestone has been using the POTENZA mark since 1981 and the TURANZA mark since

1991, and that Bridgestone's sales and advertising figures were "impressive under any standard." The Board observed that the January 30, 2008 issue of Modern Tire Dealer magazine stated that, in 2007 Bridgestone was the "leader in U.S. and Canadian new-tire sales," and that in 2007 Bridgestone's POTENZA and TURANZA tires received the Consumer's Digest magazine "Best Buy Awards." The Board found that the POTENZA and TURANZA marks are inherently distinctive because both words are fanciful terms. However, the Board found that the POTENZA and TURANZA marks are not strong or famous marks because they are usually accompanied in advertising by the mark BRIDGESTONE or Bridgestone's "B" logo. For example:



The Board concluded that "while opposers' POTENZA and TURANZA marks are inherently distinctive, any market strength they have is tied to the BRIDGESTONE mark." TTAB op. at 21, 2010 WL 985350 at *7.

Bridgestone argues that extensive evidence showed that the POTENZA and TURANZA marks have independent commercial strength and recognition, and that the Board erred in ruling that by identifying Bridgestone as the source of the tires, Bridgestone precluded recognition of these marks as strong marks. Bridgestone cited many commercial

examples in which the marks POTENZA and TURANZA are prominently featured while showing BRIDGESTONE as the manufacturer.  For example:





Bridgestone provided photographs of displays in the Bridgestone tire stores, featuring the POTENZA and TURANZA brand tires. Bridgestone also points to its accessories and giveaway items at road events and in stores, which feature the POTENZA and TURANZA tires, with or without mention of BRIDGESTONE. Bridgestone argues that the evidence of advertising, media publicity, and critical acclaim for POTENZA and TURANZA brand tires established the independent fame and strength of these tire

marks, undiminished by the identification of Bridgestone as the manufacturer. We agree that the concurrent use of the BRIDGESTONE mark does not diminish the status of POTENZA and TURANZA as strong marks for tires. The prolonged exclusive use of these marks, the extensive promotion and marketing, the billions of dollars of sales, of tires bearing these marks, shows commercial strength. A unique arbitrary word mark does not lose its strength as a trademark when the manufacturer is identified along with the branded product. Each identification may have trade significance. In *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1375 (Fed. Cir. 2002), this court held that the marks WAVE and ACOUSTIC WAVE have trademark strength independent of the Bose "house mark," although the marks appear in the same sales literature.

## B

When the goods are identical, the appearance of a mark of similar sound, appearance, or connotation is more likely to cause confusion than if the goods are significantly different. *See Century 21 Real Estate v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir.1992) ("When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines."). Exact identity is not necessary to generate confusion as to source of similarly-marked products. *See Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 33 (1900) ("It is not necessary to constitute an infringement that every word of a trademark would be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article."). In *Bose*, in comparing WAVE and ACOUSTIC WAVE with POWERWAVE, this court found that the "presence of the root element WAVE, upon this court's review, introduces a strong similarity in all three marks," *Bose*, 293 F.3d at 1378, although in that case the

goods were not identical, for the POWERWAVE product was an amplifier rather than a radio.

There is a heavy burden on the newcomer to avoid consumer confusion as to products and their source. Precedent illustrates many examples in which registration was denied to the second entrant, in view of a mark in prior use, *e.g.*, *Kimberly-Clark Corp. v. H. Douglas Enters.*, 774 F.2d 1144 (Fed. Cir. 1985) (HUGGIES and DOUGIES); *Magnavox Co. V. Multivox Corp. of Am.*, 341 F.2d 139, 141 (CCPA 1965) (MAGNAVOX and MULTIVOX). *See generally* McCarthy, *supra*, § 23:23 (collecting examples). This court has cautioned that there is "no excuse for even approaching the well-known trademark of a competitor." *Kenner Parker Toys*, 963 F.2d at 353; *Nina Ricci, S.A.R.L. v. E.T.F. Enters., Inc.*, 889 F.2d 1070, 1074 (Fed. Cir. 1989). This caution applies here; the prior user is entitled to the traditional protections of its marks of trade, as against newcomers choosing a confusingly similar mark for the same goods.

In light of the identity of the goods, the lengthy prior use of POTENZA and TURANZA, the market strength of the POTENZA and TURANZA marks, and the similarities of words, sounds, and connotation with MILANZA, sufficient similarity has been shown as would be likely to cause consumer confusion, deception, or mistake. We conclude that the Board erred in denying Bridgestone's opposition to the registration of MILANZA for intended use with tires. The Board's decision is reversed.

**REVERSED**