PER CURIAM.
Joseph Phelps Vineyards, LLC (“Vineyards”) has produced and sold wines bearing the trademark INSIGNIA since 1978. In 2012, Fairmont Holdings, LLC (“Fair-mont”) received federal registration for the mark ALEC BRADLEY STAR INSIGNIA for cigars and cigar products. On Vineyards’ petition for cancellation, the Trademark Trial and Appeal Board (“Board” or “TTAB”) denied the petition,[1] stating the finding that:
while it appears that Petitioner’s INSIGNIA branded wine has met with success in the marketplace, we are not persuaded on this record that Petitioner’s mark is a famous mark.
TTAB Op. at 8.
The TTAB found that Vineyards’ INSIGNIA mark is not a “famous” mark and gave this factor no weight. The TTAB erred in its legal analysis, in analyzing the “fame” of INSIGNIA wine as an all-or-nothing factor, and discounting it entirely in reaching the conclusion of no likelihood of confusion as to source, contrary to law and precedent. As a result of this error, the Board did not properly apply the totality of the circumstances standard, which requires considering all the relevant factors on a scale appropriate to their merits. We vacate the Board’s decision and remand for redetermination of the merits of the cancellation petition.
The Factor of “Fame”
The TTAB acknowledged: “Fame for confusion purposes arises as long as a *1325 significant portion of the relevant consuming public ... recognizes the mark as a source indicator,” citing Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 1374-75 (Fed. Cir. 2005) (“[T]he proper legal standard for evaluating the fame of a mark under the fifth DuPont factor is the class of customers and potential customers of a product or service, and not the general public.”).
The TTAB applied a legally incorrect standard in applying an all-or-nothing measure of “fame,” more akin to dilution analysis. “While dilution fame is an either/or proposition—fame either does or does not exist—likelihood of confusion fame ‘varies along a spectrum from very strong to very weak.’ ” Id. (quoting In re Coors Brewing Co., 343 F.3d 1340, 1344 (Fed. Cir. 2003)). In examination of INSIGNIA’S fame, the applicable viewpoint is that of the relevant market. Id. (“[A] mark’s renown within a specific product market is the proper standard.”).
Vineyards provided evidence that INSIGNIA wine is renowned in the wine market and among consumers of fine wine. The record shows extensive recognition and accolade for INSIGNIA brand wine. Vineyards’ INSIGNIA wines were selected as Wine of the Year in 2005 and 1997, with Wine Spectator noting that INSIGNIA wine had by 2005 earned an outstanding score in 26 of its 29 vintages and repeatedly ranked as a “classic,” scoring between 95 and 100 points. J.A. 62. Following is a selection from the exhibits presented to the TTAB with the testimony of Joseph Phelps:
• Food and Wine, October 2011, at ISO-152: “INSIGNIA was the first Bordeaux blend produced in Napa Valley ... and it’s still one of the most famous. (It’s also one of the best.).” (J.A. 82-83).
• Wall St. J., March 16, 2012: “Favorite Vintage: 1994 Phelps INSIGNIA, $70 on release. A full-bodied, generous, gorgeous wine that manages to taste youthful as well.” (J.A. 79-81).
• The Capital, February 1, 2012: “Joseph Phelps Napa Valley INSIGNIA 2008 ($200)—From one of the most respected producers in the Napa Valley, this colossal blend ... is a wine that will last for decades.” (J.A. 87-88).
• Wash. Post, February 24, 1999: “[T]his has to be INSIGNIA, because when 1 love a Cabernet and don’t know what it is, I always guess my beloved INSIGNIA.” (J.A. 73).
• Balt. Sun, April 14, 1996: Fireworks explode at tasting for ’91 Joseph Phelps INSIGNIA, “But even amid the abundance of excellent wines on show at the MacArthur tasting, the INSIGNIA stood out.... In more than a decade of attending MacArthur barrel tastings, this was the finest wine I had ever encountered.” (J.A. 74).
• Valley Times, March 8, 2000: “The granddaddy of these so-called proprietary wines is INSIGNIA, introduced by Joseph Phelps Vineyards with the 1974 vintage.” (J.A. 75).
• California Grapevine, Vol. 35, No. 5, p. 65, October-November 2009, at 65: “2006 Joseph Phelps INSIGNIA ... Very highly recommended. My score 92/100, first place.” (J.A. 90).
• Quarterly Rev. of Wines, Winter 2009/2010, at 75: “1st Place: Phelps INSIGNIA ... it’s a perennial winner at our annual Best of the Best in California.” (J.A. 92).
The record shows INSIGNIA wine served at the White House:
• The White House dinner menu honoring the Prime Minister of Canada, March 14, 2002 (Phelps INSIGNIA 1994). (J.A. 65).
*1326 • The White House Holiday dinner menu dated December 1, 2006 (Joseph Phelps INSIGNIA 2002). (J.A. 66).
• President’s Invitation to a dinner honoring The Governors of the States and Territories dated February 22, 1998 (Phelps INSIGNIA 1994). (J.A. 69-70).
The record contains many more examples. We are perplexed at the Board’s finding that INSIGNIA wine has no “fame,” giving no discernable weight to this factor. The TTAB applied an incorrect standard, for “fame” is determined from the viewpoint of consumers of like products. The record shows appreciation by consumers and the wine market of Vineyards’ INSIGNIA brand. It was error to refuse to accord any “fame” to Vineyards’ INSIGNIA mark. The factor of “fame” warrants reasonable weight, among the totality of the circumstances.
Conclusion
We vacate the decision of the TTAB solely on the basis that the Board used an incorrect standard for fame and remand for determination of the cancellation petition utilizing the correct standard.
VACATED AND REMANDED
Each party shall bear its costs.

. Joseph Phelps Vineyards, LLC v. Fairmont Holdings, Cancellation No. 92057240, 2015 WL 4658975 (TTAB July 6, 2015) ("TTAB Op.”).