This Opinion Is a
Precedent of the TTAB

Mailed: December 20, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Bell's Brewery, Inc.*
*v.*
*Innovation Brewing*

_____

Opposition No. 91215896

_____

Sarah M. Robertson, Susan Progoff, and Fara S. Sunderji of Dorsey & Whitney LLP
and G. Patrick Sage and Joanna T. French of The Firm of Hueschen and Sage,
    for Bell's Brewery, Inc.

Ian D. Gates of Dascenzo Intellectual Property Law, P.C.,
    for Innovation Brewing.

_____

Before Kuczma, Hightower, and Coggins,
    Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

Innovation Brewing ("Applicant") seeks to register the mark INNOVATION

BREWING, in standard characters and with "BREWING" disclaimed, on the

Principal Register for "beer" in International Class 32.[1] Bell's Brewery, Inc.

("Opposer") opposes registration under Section 2(d) of the Trademark Act, 15 U.S.C.

---

[1] Application Serial No. 85929587 was filed May 12, 2013, based on Applicant's allegation of a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

§ 1052(d), asserting priority and a likelihood of confusion with its mark INSPIRED BREWING, registered on the Principal Register in standard characters and with "BREWING" disclaimed, and its common-law mark BOTTLING INNOVATION SINCE 1985. We dismiss the opposition.

I.    Evidentiary Objections

Opposer objects to two pieces of evidence: a response to a request for admission, and a copy of a settlement agreement. We address each in turn.[2]

A.    Opposer's Response to Applicant's Request for Admission No. 67

The parties agree that, pursuant to Trademark Rule 2.120(j)(3)(i), 37 C.F.R. § 2.120(j)(3)(i), only admissions to requests for admission may be made of record by notice of reliance. Where they disagree is whether the response Opposer seeks to strike from the record is an admission or a denial. The request and response state:

> Request for Admission No. 67: The word "inspired" has the same meaning as the word "innovation."
>
> Response: Bell's objects to Request 67 on the ground that it is vague and indefinite. Subject to the foregoing objections, Bell's denies that the word "inspired" has the identical meaning as the word "innovation," but the terms "inspired" and "innovation" have similar meanings.

Exhibit 5 to Applicant's Notice of Reliance, Opposer's Responses to Applicant's Second Set of Requests for Admissions, 39 TTABVUE 109. We read the response in its entirety as a properly introduced admission and consider it for whatever probative value it may have.

---

[2] Trial of this proceeding concluded before the Trademark Rules of Practice were amended effective January 14, 2017. Except where otherwise specified, therefore, citations to the rules are to the rules that were in effect in 2016, at the time of trial.

B.     Settlement Agreement

Opposer also objects to admission of a confidential settlement agreement between it and a nonparty that Applicant submitted under seal as Exhibit 6 to Applicant's Notice of Reliance, 38 TTABVUE 113-18.[3] Applicant responds that this document may be submitted by notice of reliance because it was produced by Opposer, which admitted in response to a request for admission that: "All of the documents produced by Opposer in response to Applicant's First Set of Requests for Production are genuine, authentic, true, accurate, and were in the possession, custody, and/or control of Opposer." Response to Request for Admission No. 50, Exhibit 3 to Applicant's Notice of Reliance, Opposer's Responses to Applicant's First Set of Requests for Admissions, 39 TTABVUE 36.

We agree with Applicant. In *Kohler Co. v. Baldwin Hardware Corp.*, 82 USPQ2d 1100, 1103-04 (TTAB 2007), the Board made clear that because the respondent produced documents in responding to the petitioner's interrogatories and admitted in responses to requests for admissions that the documents it produced were true and correct copies of authentic documents, the documents were admissible by notice of reliance. This is a longstanding practice well known to practitioners. *See, e.g.*, TBMP § 711, 700-42 (1st ed. 1995) ("A party which has obtained documents under FRCP 34 may serve upon its adversary requests for admission of the authenticity of the

---

[3] Without divulging the contents of the confidential settlement agreement, Applicant argued in its confidential brief that the agreement is evidence of weakness of the INSPIRED BREWING mark. *See* Applicant's Brief at 11, 24-25, 45 TTABVUE 17, 30-31. The strength of Opposer's marks is discussed in Section IV(C) *infra*.

documents, and then, during its testimony period, file a notice of reliance, under 37 CFR § 2.120(j)(3)(i), on the requests for admission, the exhibits thereto, and its adversary's admissions (or a statement that its adversary failed to respond to the requests for admission.)").[4] This existing practice is codified in the amendments to the Trademark Rules that took effect after trial in this proceeding. *See* Rule 2.120(k)(3)(ii), 37 C.F.R. § 2.120(k)(3)(ii), as amended effective January 14, 2017 ("A party that has obtained documents from another party through disclosure or under Rule 34 of the Federal Rules of Civil Procedure may not make the documents of record by notice of reliance alone, except to the extent that they are admissible by notice of reliance under the provisions of § 2.122(e), or the party has obtained an admission or stipulation from the producing party that authenticates the documents."); *see also* Miscellaneous Changes to Trademark Trial and Appeal Board Rules of Practice, 81 Fed. Reg. 19296, 19297 (April 4, 2016) (Notice of Proposed Rulemaking) (stating that the proposed rule permitting a party to serve a request for admission whereby the producing party would authenticate all produced documents "recognize[s] general practice"). Opposer's objection therefore is overruled, and we consider the settlement agreement for whatever probative value it may have.

We hasten to add that consideration of the two challenged pieces of evidence, individually or together, does not alter the outcome of this proceeding.

---

[4] The first edition of the TBMP is archived on the USPTO website at uspto.gov/sites/default/files/documents/tbmp_1stedition.pdf.

## II.   Record

The record consists of the pleadings and, without any action by the parties, the file of the involved application. Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1). The record also comprises the evidence summarized below.

### A.   Opposer's Evidence

Opposer made the following evidence of record:

- Copies of its two pleaded registrations for INSPIRED BREWING, which were submitted via current printouts from the USPTO's Trademark Status & Document Retrieval (TSDR) electronic database attached as exhibits to the Notice of Opposition pursuant to Trademark Rule 2.122(d)(1), 37 C.F.R. § 2.122(d)(1), as follows:

    - Registration No. 3122464 for "beer, porter, ale, stout and malt liquor" in International Class 32;[5] and

    - Registration No. 4098319 for "beer; ale; stout; porter; malt liquor" in International Class 32, as well as collateral goods in several classes that are not at issue in this proceeding;[6]

- Opposer's Notice of Reliance with Exhibits 1-18, including certain of Applicant's responses to Opposer's discovery requests, dictionary definitions, and excerpts from the discovery deposition of Applicant's witness designated under FED. R. CIV. P. 30(b)(6), Nicole Dexter, 36 and 37 (confidential) TTABVUE;

- Opposer's Rebuttal Notice of Reliance with Exhibits 19-26, which are Internet printouts, 40 TTABVUE; and

- A transcript of the trial testimony of Laura Bell, Opposer's vice president of marketing and sales, with Exhibits 1-47, 41 (confidential) and 42 TTABVUE.

### B.   Applicant's Evidence

Applicant submitted a Notice of Reliance with Exhibits 1-41, consisting of certain of Opposer's responses to Applicant's discovery requests, authenticated produced

---

[5] Issued August 1, 2006; renewed.

[6] Issued February 14, 2012.

documents, third-party registrations, and Internet printouts, 38 (confidential) and 39 TTABVUE.

As noted, some of the evidence proffered by both parties has been designated confidential and filed under seal. We have discussed only in general terms the relevant evidence submitted under seal.

III.    Opposer's Standing and Priority

Standing is a threshold issue that must be proven by the plaintiff in every *inter partes* case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *John W. Carson Found. v. Toilets.com Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010). Opposer's standing to oppose registration of Applicant's mark is established by its two pleaded registrations, which the record shows to be valid and subsisting, and owned by Opposer. *See, e.g., Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *N.Y. Yankees P'ship v. IET Prods. & Servs., Inc.*, 114 USPQ2d 1497, 1501 (TTAB 2015).

Under Trademark Act Section 7(c), 15 U.S.C. § 1057(c), Applicant's constructive use date for purposes of priority in the INNOVATION BREWING mark is May 12, 2013, the day it filed its application pursuant to Trademark Act Section 1(b). *See Syngenta Crop Prot. Inc. v. Bio-Chek LLC*, 90 USPQ2d 1112, 1119 (TTAB 2009). Because Opposer's pleaded registrations are of record, priority is not at issue with respect to the goods identified in Opposer's pleaded registrations for the mark INSPIRED BREWING, including beer. *Mini Melts, Inc. v. Reckitt Benckiser LLC*, 118 USPQ2d 1464, 1469 (TTAB 2016) (citing *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974)). In addition, Opposer

submitted evidence that it has used its pleaded common-law mark BOTTLING INNOVATION SINCE 1985 (which Applicant calls Opposer's "Advertising Slogan") since 2009. Laura Bell Tr. at 27:25-28:14, 42 TTABVUE 29-30. Although Applicant questions the strength of Opposer's common-law mark, it "cannot dispute that Opposer's initial use of Opposer's Advertising Slogan predates Applicant's filing date." Applicant's Brief at 15, 46 TTABVUE 21. We find that Opposer has established prior proprietary rights in BOTTLING INNOVATION SINCE 1985.

Because Opposer has established its standing and priority as to both of its pleaded marks, we turn to the question of likelihood of confusion.

IV. Likelihood of Confusion

Our determination under Trademark Act Section 2(d) is based on an analysis of all probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *see also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods or services, the first two *du Pont* factors. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). Opposer bears the burden of proving its claim of likelihood of confusion by a preponderance of the evidence. *Cunningham*, 55 USPQ2d at 1848.

We address in turn each of the *du Pont* factors for which the parties submitted evidence or argument.

A.      Similarity of the Goods, Customers, and Channels of Trade

We begin with the second and third *du Pont* factors, assessing the similarity or dissimilarity of the parties' goods and their established, likely-to-continue trade channels. *Id.*, 177 USPQ at 567.

Both parties are brewers. The goods identified in the subject application are "beer," which is among the goods identified in Opposer's pleaded registrations. Opposer also has established use of its common-law mark on beer. We find under the second *du Pont* factor that the parties' goods are identical in part.

Turning to the third *du Pont* factor, because Applicant's goods and the goods identified in Opposer's registrations are identical in part, we must presume that those goods move in the same channels of trade and are available to the same classes of customers. *See Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1437 (TTAB 2014); *see also In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (finding Board entitled to rely on this presumption).

No presumptions attach to Opposer's mark BOTTLING INNOVATION SINCE 1985 because it is not registered. However, because there are no restrictions or limitations in Applicant's description of goods, we presume that Applicant's beer will move in all channels of trade normal for such goods and be purchased by all potential customers, including Opposer's trade channels and Opposer's customers and potential customers. *Viterra*, 101 USPQ2d at 1908; *CBS Inc. v. Morrow,* 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983).

The second and third *du Pont* factors weigh heavily in support of a finding that confusion is likely.

B.     Conditions of Purchase and Consumer Sophistication

The fourth *du Pont* factor assesses the "conditions under which and buyers to whom sales are made i.e., 'impulse' vs. careful, sophisticated purchasing." *Id.*, 177 USPQ at 567. The goods at issue, beer, are often relatively inexpensive and subject to impulse purchase. *See In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016) (taking judicial notice of these facts). Record evidence shows that pints of each party's beer are priced between $3 and $8. Response to Interrogatory No. 13, Applicant's Third Amended Responses to Opposer's First Set of Interrogatories, Exhibit 3 to Opposer's Notice of Reliance, 36 TTABVUE 20; Laura Bell Tr. at 84:17-21, 42 TTABVUE 86.

"When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care." *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000). We find that the fourth *du Pont* factor also weighs in favor of a likelihood of confusion.

C.     Strength of Opposer's Marks

The fifth *du Pont* factor is the fame of the prior mark, and the sixth factor is the number and nature of similar marks in use for similar goods or services. *Id.*, 177 USPQ at 567. In determining strength of a mark, we consider both inherent strength, based on the nature of the mark itself, and commercial strength or recognition. *Couch/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1476

(TTAB 2014); *see also In re Chippendales USA Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1686 (Fed. Cir. 2010) ("A mark's strength is measured both by its conceptual strength (distinctiveness) and its marketplace strength (secondary meaning).").

As discussed further *infra*, Applicant argues that both of Opposer's marks have been weakened and diluted by third-party use of similar marks for beer and related goods. Applicant also contends that Opposer's mark BOTTLING INNOVATION SINCE 1985 is inherently weak because (1) it is merely informational in nature, given that Opposer has been bottling and selling beer since 1985, and (2) it is not used on beer labels or packaging but rather on bumper stickers and other customer "swag," and therefore the public will not perceive it as a source-identifier. *See* Applicant's Brief at 15, 46 TTABVUE 21.

Concerning conceptual strength, we find that Opposer's pleaded marks INSPIRED BREWING and BOTTLING INNOVATION SINCE 1985 both are inherently distinctive. There is no evidence that the phrase constituting the latter mark is used in everyday parlance or is used by other providers in conjunction with similar goods or services to impart the same kind of information.[7] *See In re Eagle*

---

[7] Trademark Manual of Examining Procedure (TMEP) § 1202.04(a) (Oct. 2017) explains that matter that only conveys general information about an applicant's identified goods, including highly laudatory claims of superiority, fails to function as a mark. "Any evidence demonstrating that the public perception of the matter is merely to convey general information about the goods or services supports this refusal. In addition to dictionary or encyclopedia entries showing the meaning or significance of wording, supporting evidence may include materials (e.g., website pages, social-media pages, product fact sheets, and other promotional materials) showing the wording listed with other features of the goods/services, showing the wording being used in a manner that does not stand out from other informational text, or showing the same or similar wording commonly used in business or by other providers of similar goods or services to impart the same kind of general information." *Id.*

*Crest, Inc.*, 96 USPQ2d 1227, 1129-30 (TTAB 2010) (discussing exclusive rights in common phrases or slogans). In addition, some evidence showing the display of BOTTLING INNOVATION SINCE 1985, including its use on truck wraps as seen below, supports a finding that consumers would perceive it as a source indicator:[8]



Bell's Brewery, Inc. v. Innovation Brewing
Opposition No. 91215896
Bell's Brewery Exhibit No. 39

BELLS-000143

*See D.C. One Wholesaler, Inc. v. Chien*, 120 USPQ2d 1710, 1716 (TTAB 2016) ("The critical inquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public.").

---

[8] Exhibit 39 to Laura Bell Tr. and testimony at 69:1-16, 42 TTABVUE 71, 215. A non-comprehensive list showing the number and cost of Opposer's vehicle wraps is designated confidential. *Id.*, Exhibit 40 and testimony at 69:19-70:10, 41 TTABVUE 71-72, 221.

Third-party registrations may be relevant to show the sense in which a mark is used in ordinary parlance; that is, an element common to both parties' marks may have a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is inherently relatively weak. *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1136 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 982 (2016); *see also In re Morinaga Nyugyo Kabushiki Kaisha*, 120 USPQ2d 1738, 1745 (TTAB 2016) ("[T]hird-party registrations are relevant evidence of the inherent or conceptual strength of a mark or term because they are probative of how terms are used in connection with the goods or services identified in the registrations."). Evidence of use of similar marks by third parties for similar or related goods or services, in turn, is relevant to a mark's commercial strength. *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1674 (Fed. Cir. 2015).

Through its notice of reliance, Applicant introduced evidence that third parties have both registered and used marks incorporating the terms INSPIRED and INNOVATION in association with beer and related goods and services. The more probative evidence[9] is summarized in the following tables, beginning with Applicant's evidence of registration or use of INSPIRE-formative marks.

---

[9] Pending applications, cancelled registrations, and registrations for alcoholic beverages excluding beers are omitted. Certain of the listed registrations include disclaimers, which also are omitted.

| Mark | Most Relevant Goods/Services | Reference | 39 TTABVUE |
|---|---|---|---|
| HAYES' INSPIRED OLD ALE PUBLIC HOUSE | Beer | Reg. No. 4536208 | 152-57 (Exh. 16) |
| INSPIRED BY THE VINE. PERFECTED IN THE BREW KETTLE. | Beer | Reg. No. 4441119 | 143-47 (Exh. 14) |
| Palmia LAGER CON LIMÓN | Beer | Reg. No. 4635412 | 163-67 (Exh. 18) |
| INSPIRED BY TASTE | Retail stores featuring alcoholic beverages including beer | Reg. No. 4755944 | 168-71 (Exh. 19) |
| WORLD INSPIRED OHIO BREWED | Beer | Reg. No. 4458079 | 148-51, 231-39 (Exhs. 15, 35) |
| HEINEKEN INSPIRE | Beer | Reg. No. 3918086 | 119-24 (Exh. 9) |
| CHALICE DIVINELY INSPIRED | Beer | Reg. No. 4998751 | 177-81 (Exh. 21) |
| THE KIN GROUP – INSPIRE SPIRITS | Beers | Reg. No. 4017912 | 129-32 (Exh. 11) |
| AIR ALCOHOL INSPIRED REFRESHER | Beer | Reg. No. 4227737 | 133-37 (Exh. 12) |
| NATIVE-INSPIRED FOODS & SPIRITS | Beer making and brewpub services | Reg. No. 4830684 | 172-76 (Exh. 20) |
| INSPIRATION (Community Beer Co.) | Beer | Common-law use | 215-17 (Exh. 30) |
| INSPIRATION (LTS Brewing Company) | Beer | Common-law use | 218-24 (Exh. 31) |
| CREATIVELY INSPIRED. ARTFULLY BREWED. | Beer | Common-law use | 213-14 (Exh. 29) |

Applicant's evidence concerning INNOVATION marks is summarized below.

| Mark | Most Relevant Goods/Services | Reference | 39 TTABVUE |
|---|---|---|---|
| KIRIN ICHIBAN 一番搾り FROZEN BEER | Beers | Reg. No. 4575482 | 207-12 (Exh. 28) |
| barth!nnovations unlocking the potential of hops | Education in the field of beer making | Reg. No. 4120237 | 203-06 (Exh. 27) |
| INNOVATION IN TASTE | Beer | Common-law use | 251-52 (Exh. 40) |
| INNOVATION STARTS AND ENDS WITH OUR BEER DRINKERS.; DEDICATION TO INNOVATION; INNOVATION IN MOTION (Molson Coors Brewing Co.) | Beer | Common-law use | 253-55 (Exh. 41) |
| BREWING INNOVATION | Beer-brewing equipment | Common-law use | 240-41 (Exh. 36) |
| BREWING INNOVATIVE ALES IN SMALL BATCHES | Beer and brewpub services | Common-law use | 242-43 (Exh. 37) |
| CLARK BREWING INNOVATIONS | Home beer-brewing equipment | Common-law use | 244-45 (Exh. 38) |
| GENUINE INNOVATIONS | $CO_2$ chargers for kegs | Common law use | 246-50 (Exh. 39) |

Opposer distinguishes the marks and criticizes this evidence on several grounds, including that some evidence of use is dated; some marks are for goods in limited distribution; and some uses are informational rather than as trademarks. Opposer also submitted evidence with its rebuttal notice of reliance that two of the common-law marks cited by Applicant are no longer in use: INNOVATION IN TASTE and CLARK BREWING INNOVATIONS. Exhibits 24 and 25 to Opposer's Rebuttal Notice of Reliance, 40 TTABVUE 323-86. All told, Opposer argues, Applicant's evidence of

third-party use and registration does not affect the marketplace strength of Opposer's INSPIRED BREWING or BOTTLING INNOVATION SINCE 1985 marks. *See* Reply Brief at 12-13, 48 TTABVUE 18-19.

Applicant's most relevant evidence comprises some 13 distinct registrations and uses at common law of marks incorporating formatives of INSPIRE for beer or related goods, and eight registrations and uses of marks incorporating INNOVATION or, in one instance, INNOVATIVE.[10] We give probative weight to this evidence as indicating that these terms may be used by some third parties in the beer field. We do not, however, find the evidence sufficient to establish that the terms either have a descriptive significance or are in such widespread use that consumers have come to distinguish marks containing them based on minute differences. *See In re i.am.symbolic, LLC*, 866 F.3d 1315, 123 USPQ2d 1744, 1751 (Fed. Cir. 2017) (stating that evidence of third-party use "falls short of the 'ubiquitous' or 'considerable' use of the mark components present in [applicant's] cited cases"). *Cf. Jack Wolfskin*, 116 USPQ2d at 1136 (discussing "voluminous evidence" of registration and use of paw print design elements); *Juice Generation*, 115 USPQ2d at 1674 (referencing evidence of "a fair number" of third-party marks).

Considering the record as a whole, including evidence pertaining to both conceptual and commercial strength, we find that Opposer's marks are inherently distinctive and accord them the normal scope of protection to which inherently

---

[10] Although we find *infra* that the conjoint use theory does not apply to this case, we note that none of the evidence of third-party registrations and use included marks incorporating both INSPIRE and INNOVATION.

distinctive marks are entitled. *See Joseph Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 122 USPQ2d 1733, 1734 (Fed. Cir. 2017) (stating that likelihood of confusion fame varies along a spectrum from very strong to very weak).

### D. Similarity of the Marks

Finally, we consider the first *du Pont* factor, the similarity of the parties' marks. *Id.*, 177 USPQ at 567. Opposer argues that Applicant's INNOVATION BREWING mark is confusingly similar to Opposer's INSPIRED BREWING mark. Although Opposer pleaded that Applicant's mark also is confusingly similar to its mark BOTTLING INNOVATION SINCE 1985, it did not make that argument in its brief, and the claim as to the latter mark standing alone therefore is deemed waived. *See Swatch AG (Swatch SA) (Swatch Ltd.) v. M. Z. Berger & Co.*, 108 USPQ2d 1463, 1465 n.3 (TTAB 2013), *aff'd*, 787 F.3d 1368, 114 USPQ2d 1892 (Fed. Cir. 2015). Rather, Opposer now argues that Applicant's mark is confusingly similar to the joint impression created by its two marks, INSPIRED BREWING and BOTTLING INNOVATION SINCE 1985, considered together. As we discuss *infra*, we find that this claim is not properly before us.

### 1. Opposer Failed to Plead a Conjoint Use Theory

Opposer's only argument with respect to the BOTTLING INNOVATION SINCE 1985 mark is that it is used together with INSPIRED BREWING and confusion is likely under a conjoint use analysis, i.e.: "Applicant's proposed mark INNOVATION BREWING combines elements of both of Bell's conjoined trademarks INSPIRED BREWING and BOTTLING INNOVATION SINCE 1985." Opposer's Brief at 22, 44 TTABVUE 29.

Applicant objects that Opposer did not plead a claim of conjoint use and asks us to strike the argument from Opposer's brief. In its reply, Opposer contends that it need not plead conjoint use or, in the alternative, that Applicant has waived any objection "because Applicant failed to object to the introduction of the evidence of [Opposer's] conjoint use at Ms. Bell's testimony." Reply Brief at 15, 48 TTABVUE 21.

We agree that Opposer pleaded not a claim of conjoint use, but rather likelihood of confusion with each of its two marks. In the Notice of Opposition, Opposer first addressed its INSPIRED BREWING mark in ¶¶ 2-9, alleging priority and a likelihood of confusion in ¶¶ 8-9, then separately discussed BOTTLING INNOVATION SINCE 1985 in ¶¶ 10-15, alleging priority and a likelihood of confusion with that mark in ¶¶ 14-15. In the final ¶ 16, Opposer alleged that registration of the subject application would violate its rights in its "INSPIRED BREWING trademarks," a term that is not defined in the notice. Nowhere in the notice did Opposer allege that Applicant's mark would create a likelihood of confusion with Opposer's conjoint use of INSPIRED BREWING and BOTTLING INNOVATION SINCE 1985.

By contrast, in the leading cases in which an opposer pursued a conjoint use claim before the Board, the claim had been clearly pled. For example, in *Schering-Plough HealthCare Prods. Inc. v. Huang*, 84 USPQ2d 1323 (TTAB 2007), in which the Board refused registration of the mark DR. AIR, Opposer's amended pleading alleged in part that:

> Since prior to the filing date of [the subject application], Opposer has used and displayed its trademarks DR. SCHOLL'S and AIR-PILLO together on packages and in advertising so that the purchasing public associates the DR. SCHOLL'S and AIR-PILLO trademarks and recognizes that they jointly distinguish the products on which they are used and identify Opposer as the source of the products.
>
> Applicant's DR. AIR mark, which draws on two elements of Opposer's associated trademarks DR. SCHOLL'S and AIR-PILLO, is likely to cause confusion or mistake among ordinary purchasers of the goods identified in the application concerning the origin, sponsorship, or association of Applicant's goods or the possibility that Applicant's goods are manufactured and marked pursuant to authorization from Opposer.

Opposition No. 91117558, 13 TTABVUE 7 at ¶¶ 10-11.

Similarly, *Sperry Rand Corp. v. Remvac Sys. Corp.*, 172 USPQ 415 (TTAB 1971), refusing registration of REMVAC, states: "Opposer has also pleaded prior use of 'REMINGTON' and 'UNIVAC' together upon and in connection with the promotion of data processing and transmission equipment and related goods of its manufacture."[11] *Id.* at 415; *see also Simoniz Co. v. Hysan Prods. Co.*, 142 USPQ 377, 377 (TTAB 1964) ("Opposer, in its pleading, alleges that the goods of the parties are closely related and that applicant's 'PERMA LOK' is confusingly similar to opposer's trademarks 'PERMACRYLIC' and 'LOCK AND KEY' because it is 'a combined portion of each' of opposer's marks.").

We hold that a likelihood of confusion claim based on the claimant's use of two marks conjointly must be pleaded clearly enough to provide fair notice of the claim to

---

[11] *See* 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 23:61.25 (5th ed. 2017) (discussing conjoint use and characterizing *Schering-Plough* and *Sperry Rand* as "[t]wo leading examples of where the conjoint use rule has been successful").

the defendant. Our holding is analogous to our familiar requirement that a plaintiff must plead reliance on a family of marks. *Cf. Wise F&I, LLC v. Allstate Ins. Co.*, 120 USPQ2d 1103, 1107 (TTAB 2016) ("A plaintiff must plead ownership of a family of marks in its complaint in order to rely on the marks as a family as a basis for sustaining the opposition at trial or in a motion for summary judgment."); *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1927 (TTAB 2011) ("Petitioner's reference to a family of marks in its brief will not be considered because this claim was neither pleaded nor tried by the parties."); *Sunnen Prods. Co. v. Sunex Int'l Inc.*, 1 USPQ2d 1744, 1747 n.12 (TTAB 1987) (treating reference to unpleaded family of marks as if stricken from brief).

### 2. Conjoint Use Was Not Tried By Consent

We also find that a conjoint use claim was not tried by implied consent through Applicant's failure to object to evidence of conjoint use introduced in the trial testimony of Opposer's witness and exhibits. The testimony cited by Opposer does not directly address the specific extent to which the two pleaded marks are used together. The cited testimony and exhibits do establish use of both marks together, but this evidence also is relevant to Opposer's pleaded claim that confusion is likely as to each of its marks individually. Thus, Opposer's evidence was insufficient to put Applicant on notice that Opposer was proffering it in support of a conjoint use claim. *See, e.g.*, *Micro Motion Inc. v. Danfoss A/S*, 49 USPQ2d 1628, 1629 (TTAB 1998); *see also* TBMP § 507.03(b) (June 2017) ("Fairness dictates whether an issue has been tried by consent – there must be an absence of doubt that the nonmoving party is aware that

the issue is being tried."). Applicant therefore had no obligation to object during Ms. Bell's deposition.

> 3. In the Alternative, Opposer Did Not Prove the Extent of Its Conjoint Use

Even were we to find that Opposer need not have pleaded the conjoint use claim it asserted at trial or that such a claim was tried by consent, Opposer did not establish through record evidence that use of its pleaded marks together has been effective to qualify them for conjoint analysis. The two prerequisites for this showing are stated as follows in *Schering-Plough*, 84 USPQ2d at 1326:

> In order that opposer's marks may be considered together, two elements must be satisfied before traditional likelihood of confusion analysis can proceed. First, it must be established that the marks have been and are being used together on a single product or in marketing. See H.D. Hudson Manufacturing Co. v. Food Machinery and Chemical Corp., 230 F.2d 445, 109 USPQ 48 (CCPA 1956); and Simoniz Company v. Hysan Products Company, 142 USPQ 377 (TTAB 1964). Further, it must be established that opposer's marks are used in such a fashion that it would be proper to combine them for purposes of comparison, that is, that they have been used and/or advertised conjointly in such a manner and to such an extent in connection with a single product that they have come to be associated together, in the mind of the purchasing public, as indications of origin for opposer's product. (citations omitted).

Opposer satisfied the first element of the test by submitting marketing and promotional materials displaying both marks, including, for example, the truck wrap shown *supra* and the following:







---

[12] Exhibit 11 to Laura Bell Tr. and testimony at 27:3-29:10, 42 TTABVUE 29-31, 133 (promotional material for event at a Hy-Vee grocery store).

[13] *Id.*, Exhibit 17 and testimony at 39:15-40:4, 42 TTABVUE 41-42, 151 (ad that ran in August 2009 and August 2010 issues of REVIEW MAGAZINE, distributed in Southwest Michigan).

[14] *Id.*, Exhibit 41 and testimony at 72:12-75:6, 42 TTABVUE 74-77, 223 (screen shots showing promotional stickers from Opposer's Facebook pages).

Opposer has not, however, met the second element of the test by establishing that its marks "have been used and/or advertised conjointly in such a manner and to such an extent in connection with a single product that they have come to be associated together, in the mind of the purchasing public, as indications of origin for opposer's product." *Schering-Plough*, 84 USPQ2d at 1326. Apart from its vehicle wraps, Opposer's evidence of use of its two pleaded marks together generally represents discrete instances, comprising ads from three magazine issues;[15] a digital billboard in Alexandria, Michigan;[16] and photos and testimony concerning four beer festivals, although Opposer's witness did testify that some elements are typical of Opposer's use at other beer festivals.[17]

Missing from Opposer's proof is sufficient evidence that its two marks have been used conjointly to such an extent that together they have come to indicate source. Even for the evidence displaying both marks, there is no reason to assume that purchasers would see them as anything other than two distinct marks. *See, e.g.*, *Simoniz Co.*, 142 USPQ at 378 (declining to assume that a customer would automatically combine parts of two marks appearing together on a product label). In contrast, the plaintiff in *Sperry Rand* showed that it "has consistently displayed conjointly its marks and trade names 'REMINGTON', 'REMINGTON RAND' and

---

[15] *Id.*, Exhibit 15 and testimony at 38:7-38:9, 42 TTABVUE 39-40, 144 (ad from October 2009 issue of ENCORE magazine).

[16] *Id.*, Exhibit 21 and testimony at 42:12-20, 42 TTABVUE 44, 155 (image from digital billboard in Alexandria, Michigan).

[17] *Id.,* Exhibits 32-34 and testimony at 58:7-62:8, 42 TTABVUE 60-64, 198-205 (pictures of sailboat turned into beer dispenser displaying both marks that was used at two festivals in 2015 and other uses of both marks at festivals, e.g., on kegs, draft boxes, and token tubs).

'UNIVAC,'" 172 USPQ at 416, while the plaintiff in *Schering-Plough* submitted testimony that it never used its pleaded mark AIR-PILLO without its house mark DR. SCHOLL'S, 84 USPQ2d at 1327. *See also Am. Cyanamid Co. v. J. Josephson, Inc.*, 192 USPQ 765, 767 (TTAB 1976) (noting that an estimated 95 percent of opposer's advertising and promotional materials jointly featured its pleaded conjoint marks). More comprehensive evidence of joint use than Opposer submitted would be necessary to provide supporting context for a successful conjoint use claim.

In sum, we find that Opposer has waived its claim that Applicant's mark is likely to cause confusion with its mark BOTTLING INNOVATION SINCE 1895, and that Opposer failed to plead or, in the alternative, to prove a conjoint use claim. Thus, under the first *du Pont* factor, we assess only the similarity of Applicant's mark INNOVATION BREWING to Opposer's mark INSPIRED BREWING.

    4.    Similarity of INNOVATION BREWING to INSPIRED BREWING

In a likelihood of confusion analysis, we compare the marks in their entireties for similarities and dissimilarities in appearance, sound, connotation and overall commercial impression. *Palm Bay Imps. Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (quotation omitted).

Where, as here, the marks are used in association with identical goods, the degree of similarity between the marks necessary to support a determination that confusion is likely declines. *Bridgestone Ams. Tire Operations LLC v. Fed. Corp.*, 673 F.3d 1330, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992).

Both marks consist of a lead word starting with IN- followed by the same disclaimed word, BREWING, which is descriptive or generic in association with beer and therefore entitled to relatively less weight in our analysis.[18] *See, e.g.*, *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985) ("That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark[.]"); *Primrose Ret. Cmtys., LLC v. Edward Rose Senior Living, LLC*, 122 USPQ2d 1030, 1037 (TTAB 2016) (quoting *Nat'l Data*). Although the initial letters IN- lend some similarity to the marks, INSPIRED and INNOVATION look and sound different (INNOVATION is longer than INSPIRED, with no shared phonemes) and convey different meanings. Opposer submitted the following definitions from the Merriam-Webster online dictionary:

- **inspired** *adjective*
  Simple Definition of INSPIRED
    : very good or clever
    : having a particular cause or influence

---

[18] Generally, consumers are more inclined to focus on the first word in a trademark. *See, e.g.*, *Palm Bay Imps.*, 73 USPQ2d at 1692; *Century 21*, 23 USPQ2d at 1700; *Presto Prods. Inc. v. Nice-Pak Prods. Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988).

Full Definition of INSPIRED

: outstanding or brilliant in a way or to a degree suggestive of divine inspiration <gave an *inspired* performance>[19]

- **innovation** *noun*

Simple Definition of INNOVATION

: a new idea, device, or method
: the act or process of introducing new ideas, devices, or methods

Full Definition of INNOVATION

1 : the introduction of something new
2 : a new idea, method, or device : NOVELTY[20]

There simply is no overlap in the meanings of these two words. Opposer's argument that "[b]oth words have a similar connotation in, at a minimum, denoting a positive attribute as applied to beer, such that they will be confused and mistaken by consumers as one for the other or as coming from the same source, particularly when combined with the identical word BREWING" is insufficient. Reply Brief at 2, 48 TTABVUE 8. Not all marks denoting positive attributes are confusingly similar. We also disagree with Opposer that "inspired" suggests "a new way of doing things or something that causes a person to do something new." Opposer's Brief at 21, 44 TTABVUE 28. There is no evidence that "inspired," like "innovation," conveys a suggestion of novelty.

Paired with BREWING, the dictionary definitions of record show that INSPIRED connotes beer that tastes very good, while INNOVATION connotes a new method of brewing. Thus, the overall commercial impressions made by the marks as a whole are dissimilar. Even bearing in mind that the required degree of similarity is lower

---

[19] Opposer's Notice of Reliance, Exhibit 4, 36 TTABVUE 27-33.

[20] *Id.*, Exhibit 5, 36 TTABVUE 34-42.

because the marks are used in association with identical goods, we find no support for a conclusion that persons who encounter the marks would be likely to assume a connection between the parties.

Considered in their entireties, we find that INSPIRED BREWING and INNOVATION BREWING differ in sight, sound, meaning, and overall commercial impression to an extent that the first *du Pont* factor, the similarity of the marks, weighs heavily against a finding that confusion is likely.

V.    Conclusion

We have carefully considered all arguments and evidence properly of record, including any not specifically discussed herein, as they pertain to the relevant likelihood of confusion factors. To the extent that any other *du Pont* factors for which no evidence was presented by Applicant or Opposer nonetheless may be applicable, we treat them as neutral.

Any of the *du Pont* factors may play a dominant role in our analysis, and in some cases, a single factor is dispositive. *Champagne Louis Roederer S.A. v. Delicato Vineyards*, 148 F.3d 1373, 47 USPQ2d 1459, 1460 (Fed. Cir. 1998) (holding that the Board did not err in deciding likelihood of confusion based solely on dissimilarity of marks, noting that "we have previously upheld Board determinations that one *DuPont* factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks"); *Kellogg Co. v. Pack'em Enters. Inc.*, 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991). We find this to be such a case.

We have found that the parties' goods, customers, and channels of trade are identical; that beer is inexpensive and subject to impulse purchase; and that Opposer's marks are afforded the normal scope of protection to which inherently distinctive marks are entitled. Nonetheless, on the record before us, we find that the dissimilarity of the marks INSPIRED BREWING and INNOVATION BREWING in appearance, sound, connotation, and overall commercial impression outweighs the other *du Pont* factors. For that reason, we find the first *du Pont* factor to be outcome-determinative.

Considering the record evidence as a whole, we find that Opposer has not carried its burden to establish by a preponderance of the evidence that Applicant's mark INNOVATION BREWING is likely to cause consumer confusion with Opposer's mark INSPIRED BREWING in association with beer.

***Decision****:* The opposition to registration of application Serial No. 85929587 is dismissed.